**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| MARK MICHAEL, and MATTHEW YOUNG individually and on behalf of all others similarly situated, | Case No. 1:25-cv-02192-RLY-KMB |
| Plaintiffs,<br>v. | JUDGE RICHARD L. YOUNG |
| STAKE CENTER LOCATING, LLC | JURY DEMANDED |
| Defendant. | |

**SECOND AMENDED SECTION 216(b)/CLASS ACTION COMPLAINT**

## I. INTRODUCTION

1. This is an action brought by Michael Mark, and Matthew Young ("Named Plaintiffs"), on behalf of themselves and all others similarly situated against Stake Center Locating, LLC ("Defendant" or "Stake").

2. Named Plaintiffs bring their federal claims against Defendant in order to recover compensation, liquidated damages, attorneys' fees and costs, and other equitable relief pursuant to the Fair Labor Standard Act of 1939 ("FLSA"), as amended 29 U.S.C. § 201 *et seq.* Named Plaintiffs seek Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to inform other similarly situated employees of their rights under the FLSA.

3. Named Plaintiffs bring their Indiana wage claims against Defendant in order to recover compensation, liquidated damages, attorneys' fees and costs, and other equitable relief pursuant to IND. CODE ANN. § 22-2-2-9.

4. Named Plaintiffs and those similarly situated (hereafter, "Putative Plaintiffs") are current and former employees of Defendant who did not receive one and a half (1 ½) times their regular rate for all hours worked over forty (40) in a workweek.

5. Under the FLSA and the Indiana Minimum Wage Law of 1965 ("IMWL"), Defendant was required to pay Named Plaintiffs and the Putative Plaintiffs 150% of their regular rate for all hours worked over forty (40) in a workweek. By willfully failing to compensate Named Plaintiffs and the Putative Plaintiffs who performed pre-shift, meal break, and post-shift work, Defendant willfully violated the FLSA and the IMWL, IND. CODE ANN. § 22-2-2-4, and the Indiana Wage Payment Statute ("IWPS"), IND. CODE ANN. § 22-2-5-1.

6. The original Complaint was filed on October 24, 2025. (ECF No. 1).

## II. JURISDICTION AND VENUE

7. The jurisdiction of this Court is invoked pursuant to federal question jurisdiction under 28 U.S.C. § 1331, in that this case arises under a federal law of the United States.

8. This Court has supplemental jurisdiction over Named Plaintiffs and the Putative Class Members' Indiana Minimum Wage Law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to Named Plaintiffs' claims under the FLSA that they form part of the same controversy.

9. Venue in the Southern District of Indiana is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district.

## III. THE PARTIES

10. Michael Mark ("Named Plaintiff Mark") is an adult resident of Indiana residing at 24311 Brehm Road, Noblesville, Indiana 46060. Named Plaintiff Mark was employed by Defendant as an hourly non-exempt Fiber Locator Technician ("Hourly Utility Locator") from

approximately March 2021 through June 2021. In or about June 2021, Named Plaintiff Mark was promoted to hourly non-exempt Lead Fiber Locator Technician ("Lead Utility Locator"), a position he held until his employment ended in October 2021. Named Plaintiff returned to work for Defendant in July 2022 as an Hourly Utility Locator, a position he held until June 2023. His consent form was filed on October 24, 2025. (ECF No. 1-1).

11. Matthew Young ("Named Plaintiff Young") is an adult resident of Indiana residing at P.O. Box 47, Lapel, Indiana 46051. Named Plaintiff Horton was employed by Defendant as an hourly non-exempt Fiber Locator Technician ("Utility Locator") from June 2, 2021 until June 15, 2023. His consent form was filed on October 24, 2025. (ECF No. 1-2).

12. Utility Locators and Lead Utility Locators will be collectively referred to as "Hourly Utility Locators."

13. The Putative Plaintiffs are all non-exempt employees employed by Defendant within three (3) years preceding the commencement of this action who were not paid overtime at a rate of 150% their respective regular rates for all hours worked over forty (40) in a workweek.

14. Defendant Stake Center Locating, LLC is a foreign limited liability company registered to do business in the state of Indiana. Defendant has been served and first appeared herein on October 30, 2025.

## IV. PROCEDURAL HISTORY

15. The original Complaint was filed on October 24, 2025. (ECF No. 1).

16. Defendant first appeared on October 30, 2025. (ECF No. 5).

17. Opt-in Plaintiffs Scott Certain and Brian Holiday filed their Notices of Consent to Join the instant matter on November 7, 2025. (ECF No. 6).

18. Opt-In Plaintiff Rocky McKenney filed his Notice of Consent to Join the instant matter on November 12, 2025. (ECF No. 7).

19. On November 24, 2025, Plaintiffs filed their First Amended Complaint, which altered the claims they'd raised in their original Complaint. (ECF No. 8).

20. On January 4, 2026, Defendants provided Plaintiffs with four arbitration agreements that were executed by Named Plaintiff Andrew Horton and Opt-in Plaintiffs Lucas Andrews, Brian Holiday and Ralph Collins.

21. Defendant filed its Answer to Plaintiffs' First Amended Complaint on January 5, 2026. (ECF No. 11).

22. On the same day, Named Plaintiff Andrew Horton and Opt-in Plaintiffs Lucas Andrews, Brian Holiday and Ralph Collins filed a Notice of Voluntary Dismissal without Prejudice. (ECF No. 12).

23. The remaining Named Plaintiffs and Opt-in Plaintiffs now come to file their Second Amended Complaint to ensure that the Complaint in this case accurately reflects the facts and parties at issue in the instant matter.

## V. FACTUAL ALLEGATIONS

24. During all times material to this Complaint, Defendant was an employer within the meaning of the FLSA and IMWL.

25. During all times material to this Complaint, Defendant employed Named Plaintiffs and the Putative Plaintiffs within the meaning of the FLSA and IMWL.

26. During all times material to this Complaint, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person,

and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

27. During all times material to this Complaint, Named Plaintiffs and the Putative Plaintiffs were Defendant's hourly non-exempt employees pursuant to IMWL and have been individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-07. IND. CODE ANN. § 22-2-2-3.

28. During all times material to this Complaint, Defendant hired and continued to employ Named Plaintiffs and the Putative Plaintiffs hourly non-exempt employees.

29. During all times material to this Complaint, Named Plaintiffs and the Putative Plaintiffs were classified as non-exempt and paid at an hourly rate, and thus were entitled to be paid at least 150% of their regular rate for all hours worked over forty (40) in a workweek.

30. Defendant is a utility locating company[1] that provides "complete coverage in all 48 contiguous states," including Indiana.[2]

31. Defendant is the third largest locating company in the United States.[3]

32. During all times material to this Complaint, Named Plaintiffs and the Putative Plaintiffs regularly worked beyond forty (40) hours in a workweek.

33. As a Locator, Named Plaintiff Mark and Named Plaintiff Young's job was to locate underground utilities; troubleshoot; mark the ground using paint and flags; document utility damage, if a Lead Fiber Locator Technician and Area Manager were unavailable; and promote damage prevention.[4]

---

[1] *Stake Center*, https://www.stakecenter.com/ (last visited Sept. 17, 2025).
[2] *Service Areas*, https://www.stakecenter.com/service-areas/ (last visited Oct. 8, 2025).
[3] *See* Complaint at 2, *Wolfe v. Stake Center Locating*, No. 230402591, Ct. Com. Pl., Phila. Cnty., Apr. 25, 2023.
[4] *Locate Technician – Gary, IN*, stakecenterlocating.com, https://stakecenterlocating.hrmdirect.com/employment/job-

34. As a Lead, Named Plaintiff Mark's job was to locate underground utilities; troubleshoot; mark the ground using paint and flats; review and close open tickets without first visiting the work site; liaise with contractors and clients; document damage to utility lines, if an Area Manager is unavailable; and promote damage prevention.

35. During all times material to this Complaint, Named Plaintiffs and the Putative Plaintiffs have been employed by Defendant as Utility Locators, with their primary job duties being to locate utilities underground, mark the ground using paint and flags, and document any damage.

36. During all times material to this Complaint, Defendant recorded Named Plaintiffs and the Putative Plaintiffs' hours worked using the software system UtiliSphere.

37. During all times material to this Complaint, Defendant closely monitored the work of Named Plaintiffs and the Putative Plaintiffs to balance productivity verses cost. To accomplish this, Defendant assigned and tracked work assignments through a software program known as UtiliSphere. Work assignments were referred to as "tickets." A ticket tracked the location of the work site, the type of work that needed to be performed, and the number of "members" (utility providers) associated with each work site.

38. As part of their employment, Defendant's Utility Locators are required to service a certain number of members per hour ("MPH"). Each Utility Locator's productivity is tracked using a "budget" and each Utility Locator's target budget varies depending on their assigned work location and Defendant's needs. Each Utility Locator receives regular e-mails that track their MPH and explain how it relates to their target budget. The goal of this e-mail is to encourage each Utility Locator to meet or exceed their budget.

---

opening.php?req=3508866&req_loc=997050&&cust_sort1=247313&#job (last accessed Oct. 8, 2025)

39. During all times material to this Complaint, Named Plaintiffs and the Putative Plaintiffs could be assigned to one of two shifts during their workday: Day Shift or the On Call Shift. The assigned shifts varied and were not exclusive—Named Plaintiffs and the Putative Plaintiffs typically worked at least one of each shift during their employment.

***On Call Shift***

40. Defendant scheduled Named Plaintiffs and the Putative Plaintiffs to be available to work from 5:00 p.m. until 7:00 a.m. when they were scheduled for the On Call Shift. Although Named Plaintiffs and the Putative Plaintiffs were required to be available for work from 5:00 p.m. until 7:00 a.m., pursuant to Defendant's companywide policy, they were not on-the-clock.

41. During the On Call Shift, Defendant's companywide policy required Named Plaintiffs and the Putative Plaintiffs to keep their work phone on and with them. If Named Plaintiffs and the Putative Plaintiffs received a call on their work phone, Defendant required them to answer the automated call and complete the prompts to accept the work assignment. Then, Defendant required Named Plaintiffs and the Putative Plaintiffs to turn on their work computer; log into UtiliSphere; sync UtiliSphere; find the ticket at issue; review the ticket to identify the problem, and the site location; and accept the ticket—all while off-the-clock.

42. Once the Named Plaintiffs and the Putative Plaintiffs accepted the ticket, they would load into their work vehicle, clock in, and drive to the site to address the issue.

43. Defendant's companywide policy required Named Plaintiffs and the Putative Plaintiffs to respond to emergency tickets within two (2) hours.

44. Once they received an emergency ticket, Named Plaintiffs and the Putative Plaintiffs were required to either accept the ticket, or, if they were already responding to another ticket and thus unavailable, to contact the contractor who initiated the ticket and resolve the conflict.

45. Named Plaintiffs and the Putative Plaintiffs would then clock out after they returned home and exited their work vehicle. Pursuant to Defendant's companywide policy Named Plaintiffs and the Putative Plaintiffs were then required to continue to monitor their phones and respond to additional calls until their shift ended at 7:00 a.m.

46. Hours worked by a Utility Locator during the On Call Shift were paid at a higher hourly rate of one and a half times (1 ½) the Utility Locator's Day Shift rate.

***Day Shift***

47. During all times material to this Complaint, Utility Locators assigned to the Day Shift were scheduled to work from 8:00 a.m. to 5:00 p.m.

48. From 2022 until sometime in 2023, Named Plaintiffs and the Putative Plaintiffs were not required to be at their first job site until 9:00 a.m. Before going to their first job site, Named Plaintiffs and the Putative Plaintiffs were permitted approximately one hour to work from home. During the one-hour prep time, Named Plaintiffs and the Putative Plaintiffs logged into UtiliSphere; checked if there were any outstanding Emergency Tickets; ensured that the work ticket they'd reserved was still available; screened tickets that could be resolved remotely; handled calls with clients or contractors; responded to e-mails; plan their work day; performed a vehicle inspection; loaded supplies and equipment into their work truck; and drove to their first work site.

49. During the drive to the first job site, Named Plaintiffs and the Putative Plaintiffs would respond to work calls and attempt to resolve remote tickets.

***Unpaid Pre-Shift Work***

50. At some point in 2023, Defendant removed the one-hour prep time and required Named Plaintiffs and the Putative Plaintiffs to only clock in after arriving at the first worksite and to arrive at the worksite no later than 8:00 a.m.

51. These changes meant that the time Named Plaintiffs and the Putative Plaintiffs spent working before and during their commute to their first worksite had to be performed off-the-clock.

52. On or around the beginning of 2024, Defendant again changed its policies and required Named Plaintiffs and the Putative Plaintiffs to arrive at their first worksite and clock in at 7:00 a.m.

53. Named Plaintiffs and the Putative Plaintiffs continued to have to perform their pre-shift prep work both before and during their travel to their first worksite off-the-clock and unpaid.

***Unpaid Post-Shift Work***

54. Pursuant to Defendant's companywide policy Named Plaintiffs and the Putative Plaintiffs were required to keep their work phones on and respond to calls until 5:00 p.m., even though they had typically already finished their last job of the day and clocked out.

55. Pursuant to Defendant's companywide policy Named Plaintiffs and the Putative Plaintiffs were required to clock out at their final worksite of the day.

56. In order to keep up with their workload, Named Plaintiffs and the Putative Plaintiffs had to complete post-shift work, such as answering emails, client calls, unloading supplies from their work vehicle, and a post route vehicle inspection all while off-the-clock and unpaid.

57. Although Defendant knew Named Plaintiffs and the Putative Plaintiffs had to complete this work at the end of their shift, and could only complete it after returning home, it was Defendant's companywide policy to not permit Named Plaintiffs and the Putative Plaintiffs to remain clocked in for this work time.

***Unpaid Meal Breaks***

58. Pursuant to Defendant's companywide policy, Named Plaintiffs and the Putative Plaintiffs were required to clock out for thirty (30) minutes for a meal break each day, regardless of whether they actually received an undisturbed thirty (30) minute break each day.

59. Due to Defendant's strict MPH requirements, Named Plaintiffs and the Putative Plaintiffs were required to work continuously throughout their workday in order to meet their ticket quota.

60. Failure to meet their MPH requirements could result in the Named Plaintiffs and the Putative Plaintiffs being disciplined, which could include termination.

61. Although Named Plaintiffs and the Putative Plaintiffs could not take an undisturbed thirty (30) minute break and meet their MPH requirements, Defendants continued to require Named Plaintiffs and the Putative Plaintiffs to clock out for thirty (30) minutes each day.

62. Should Named Plaintiffs and the Putative Plaintiffs fail to record a thirty (30) minute meal break each workday, they could also be disciplined.

63. After being hired, Named Plaintiff Mark, for example, did not take a thirty (30) minute meal break due to his busy shift and, therefore, did not record a meal break in his time records. Because Named Plaintiff Mark did not record a meal break in his timecard, his direct supervisor disciplined him and informed him that he always had to record taking a thirty (30) minute meal break. After this conversation, Named Plaintiff Mark continued to work without taking his thirty (30) minute meal break but, he made sure to clock out for thirty (30) minutes every day while screening tickets to avoid additional discipline. To ensure he never forgot, he made sure to clock out at around 11:30 a.m. every day.

64. The effect of Defendant's policies are such that the only way to not be disciplined is to work throughout each shift without stopping—in order to meet the MPH requirements—and

to deduct thirty (30) minutes from Named Plaintiffs and the Putative Plaintiffs' own pay for a meal break they did not take—in order to avoid discipline for not recording one.

65. During all times material to this Complaint and upon information and belief, Defendant was aware that Named Plaintiffs and the Putative Plaintiffs often worked approximately thirty (30) minutes before and after their scheduled shifts and permitted this to occur.

66. During all times material to this Complaint, Defendant did not have a formal process or mechanism to for Named Plaintiffs and the Putative Plaintiffs to report time worked outside of when they were permitted to clock in pursuant to Defendant's companywide policies; however, Defendant did record the work performed off-the-clock on the UtiliSphere program and by tracking the driving time.

***Defendant's Violation of the FLSA and Indiana Wage Laws was Willful***

67. Further Defendant failed to pay Named Plaintiffs and the Putative Plaintiffs overtime wages at a rate of time and one half (1 ½) their regular rate of pay.

68. Defendant maintained policies that provided employees will be paid only for their scheduled shifts—even if they worked more than that—or, if assigned to the On Call shift, employees will only be paid when on their way to the emergency ticket—and not for the time handling the call or prep work that needed to be done before traveling to the ticket. These policies deliberately exclude from compensation the hours employees actually worked outside their scheduled shifts or while preparing to respond to an emergency ticket while On Call even though Defendant knew that employees routinely performed such work.

69. Defendant's policies also required Named Plaintiffs and the Putative Plaintiffs to perform work during their unpaid meal breaks.

70. During all times material to this Complaint, the off-the-clock work performed by the Named Plaintiffs and the Putative Plaintiffs qualified as overtime hours.

71. During all times material to this Complaint, Defendant's failure to pay Named Plaintiffs and the Putative Plaintiffs for all hours worked over forty (40) at one-and one-half (1 ½) times their proper regular rates was a violation of the FSLA and the IMWL.

72. During all times material to this Complaint, Defendant knowingly, willfully, or with reckless disregard carried out this illegal pattern or practice of failing to pay Named Plaintiffs and the Putative Plaintiffs for all hours worked over forty (40) in a work week at an amount equal to 150% of their regular rate.

73. During all times material to this Complaint, Defendant's practice of not paying Named Plaintiffs and the Putative Plaintiffs for all hours worked over forty (40) in a workweek at an amount equal to 150% of their regular rate, was willful and not in good faith within the meaning of 29 U.S.C. § 255(a).

74. During all times material to this Complaint, and upon information and belief, Defendant willfully carried out their illegal scheme. This is evidenced by Defendant's previous lawsuits: *Chao v. Stake Center Locating,* No. 3:07-cv-1833 (Oregon July 22, 2008) and *Walker v. Stake Center Locating*, No. 2:21-cv-00183 (C.D. Utah Oct. 21, 2022). Since the dismissal of both matters, Defendant implemented additional illegal practices and policies which has caused further violations of state and federal law.

75. The unpaid wages to which Named Plaintiffs and the Putative Plaintiffs are entitled to have remained unpaid for more than ten (10) days beyond the regularly scheduled payday, in violation of the IWPS.

76. The unpaid wages to which Named Plaintiffs and the Putative Plaintiffs are entitled have remained unpaid beyond their regular pay day for the period in which their workweek ends, in violation of the FLSA. 29 C.F.R. § 778.106

## V. COURT SUPERVISED NOTICE PURSUANT TO 29 USC § 216(b) ALLEGING FLSA VIOLATIONS

77. Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

78. Named Plaintiffs bring their claims individually and as part of a collective action under the FLSA, 29 U.S.C. § 216(b), and as a class action under Fed. R. Civ. P. 23, on behalf of current and former Hourly Utility Locators who worked in Indiana. These collective action claims are for overtime compensation, liquidated damages or interest, and attorneys' fees and costs under the FLSA, 29 U.S.C. §§ 207, 216(b), and the IMWL, IND. CODE ANN. § 22-2-2, *et seq.*

79. Named Plaintiffs request that the Court issue Court Supervised Notice to the following group of current and former employees ("Employees Entitled to Notice") defined as:

> **All current and former Hourly Utility Locators who worked for Stake Center Locating, LLC in Indiana at any time within the three (3) years preceding the commencement of this action through the present.**

80. Named Plaintiffs reserve the right to amend and refine the definition of the Employees Entitled to Notice they seek to have the Court serve notice based upon further investigation and discovery.

81. The precise size and identity of the proposed Employees Entitled to Notice should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendant.

82. Court Supervised Notice to the Employees Entitled to Notice pursuant to 29 U.S.C. § 216(b) and IND. CODE ANN. § 22-2-2-9 is appropriate because there exists at least a strong likelihood that they are similarly situated to the Named Plaintiffs.

83. Sending Court Supervised Notice pursuant to 29 U.S.C. § 216(b) and IND. CODE ANN. § 22-2-2-9 to the Employees Entitled to Notice is appropriate because they have been

subjected to single companywide policies and common business practices referenced in the paragraphs above, and the success of their claims depends upon the resolution of common issues of law and fact, including *inter alia*, whether Defendant satisfied the FLSA and IMWL's requirements for paying them at a rate not less than one and one-half (1 ½) their regular rate of pay for all hours worked in excess of forty (40) hours each workweek.

84. Named Plaintiffs and the Employees Entitled to Notice, having willfully been not paid their entitled compensation for work they performed pursuant to the common policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b), IND. CODE ANN. § 22-2-2-9, and the associated decisional law.

85. The Named Plaintiffs and the Employees Entitled to Notice have been similarly affected by the violations of Defendant in workweeks during the relevant time period, which amounts to a single decision, policy, or plan to willfully avoid paying all earned FLSA compliant wages.

86. Named Plaintiffs seek to have the Court send supervised notice pursuant to 29 U.S.C. § 216(b), as defined above, to the proposed group of similarly situated current and former employees, i.e., Employees Entitled to Notice.

87. Named Plaintiffs are similarly situated to the Employees Entitled to Notice and will prosecute this action vigorously on their behalf.

88. Named Plaintiffs intend to send notice to all the Employees Entitled to Notice pursuant to Section 216(b) of the FLSA. The names and addresses of the Employees Entitled to Notice are available from Defendant's records. For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendant. Notice can be provided by means permissible under the FLSA.

89. Named Plaintiffs and the Employees Entitled to Notice have been similarly damaged by Defendant's willful refusal to pay minimum wages for all hours worked, including failing to pay 150% of Named Plaintiffs' and the Employees Entitled to Notice's regular rate for all hours worked beyond forty (40) in a workweek.

90. As a result of Defendant's FLSA violations, Named Plaintiffs and the Employees Entitled to Notice are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

91. As a result of Defendant's violation of Indiana law, Named Plaintiffs and the Employees Entitled to Notice are entitled to unpaid wages, statutory penalties, interest, and attorneys' fees and costs under the IWPS, IND. CODE ANN. § 22-2-5, *et seq.*, and the IWCS, IND. CODE ANN. § 22-2-9, *et seq.*, as applicable.

92. Any alleged defenses Defendant may raise will be common to the Named Plaintiffs and the Employees Entitled to Notice.

## VI. CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT

93. Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

94. During the time period beginning approximately three (3) years preceding the commencement of this action to the present, Defendant was an employer of Named Plaintiffs and Employees Entitled to Notice within the meaning of 29 U.S.C. § 203(d).

95. During the time period from approximately three (3) years preceding the commencement of this action to the present, Named Plaintiffs and the Employees Entitled to Notice were employed by Defendant within the meaning of 29 U.S.C. § 203(e)(1).

96. During the time period from approximately three (3) years preceding the commencement of this action to the present, Defendant employed Named Plaintiffs and the Employees Entitled to Notice within the meaning of 29 U.S.C. § 203(g).

97. During the time period from approximately three (3) years preceding the commencement of this action to the present, Defendant was an employer subject to the FLSA.

98. During all times material to this Complaint, Named Plaintiffs and the Employees Entitled to Notice have not been exempt from receiving overtime benefits under the FLSA because, *inter alia*, they were not "executive," "administrative," or "professional" employees, as those terms are defined under the FLSA. 29 C.F.R. §§ 541.0, *et seq*.

99. At all times material to this Complaint, Defendant regularly employed Named Plaintiffs and the Employees Entitled to Notice to work more than forty (40) hours in a workweek.

100. Defendant violated federal law because it knew or should have known that Named Plaintiffs and the Employees Entitled to Notice should have been paid overtime at a rate not less than time and one-half (1 ½) times their regular rate of pay for all hours worked over forty (40) in a workweek, including work performed off-the-clock.

101. Defendant, as described above, violated the FLSA, 29 U.S.C. § 207, by failing to pay Named Plaintiffs and the Employees Entitled to Notice at the appropriate overtime rate for all hours worked in excess of forty (40) per workweek.

102. Named Plaintiffs and the Employees Entitled to Notice should have been paid 150% of their regular rate for all hours worked beyond forty (40) in a workweek during the three years from the filing date of the Complaint or when they join this lawsuit.

103. Defendant willfully violated and continues to willfully violate the FLSA, by having engaged and continuing to engage in conduct, which demonstrates a willful and/or reckless disregard for the provisions of the FLSA.

104. Named Plaintiffs and the Employees Entitled to Notice are entitled to unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available as compensation for Defendant's violations of FLSA, by which the Named Plaintiffs and the Employees Entitled to Notice have suffered and continue to suffer damages.

**COUNT II**
**VIOLATION OF THE INDIANA MINIMUM WAGE LAW**

105. Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

106. IMWL provides that covered employees shall be compensated for every hour worked in one workweek. IND. CODE ANN. § 22-2-2-4(f); *see also* 29 U.S.C. § 206(b).

107. The IMWL provides that employees shall receive overtime compensation at a rate "not less than one and one-half times" the employee's regular rate of pay for all hours worked over forty (40) hours in one workweek, with limited exceptions. *Id.*

108. At all times material to this Complaint, Defendant was an employer covered by the IMWL and is required to comply with its mandates.

109. At all times material to this Complaint, Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Indiana were covered "employees" of Defendant pursuant to the IMWL and thus entitled to the IMWL's protections.

110. At all times material to this Complaint, Defendant regularly employed Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Indiana to work more than forty (40) hours in a workweek.

111. At all times material to this Complaint, Defendant violated the IMWL by repeatedly failing to compensate Named Plaintiffs and Employees Entitled to Notice who join this lawsuit from Indiana for all hours worked, including Defendant's repeated action of refusing to

compensate Named Plaintiffs and Employees Entitled to Notice who join this lawsuit from Indiana for all hours worked over forty (40) hours in a workweek at a rate not less than one and one-half (1 ½) times their regular rate.

112. Defendant violated the IMWL because it knew or should have known Named Plaintiffs and the Putative Plaintiffs should have been paid overtime for all hours worked over forty (40) in a workweek, including work performed prior to or beyond their regularly scheduled hours.

113. Indeed, at all times material to this Complaint, Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Indiana did not receive one and one-half (1 ½) times their regular rate for all hours they worked in excess of forty (40) in a workweek.

114. Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Indiana are not exempt from the wage protections of state law. During relevant times, Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Indiana were not exempt from receiving overtime because they were not "executive," "administrative," "professional," "outside sales," or "computer" employees, as those terms are defined under the FLSA. IND. CODE ANN. § 22-2-2-3(n); *see also* C.F.R. §§ 541 *et seq.*

115. In violating the IMWL, Defendant's acts and omissions have been of a willful, intentional, and bad faith nature or otherwise in reckless disregard of the IMWL.

116. Defendant has made it difficult to account with precision for the unpaid overtime worked by its employees as it altered and/or did not preserve the hours worked by such employees as required for non-exempt employees by 29 U.S.C. § 211(c) and IND. CODE ANN. § 22-2-2-8.

117. Defendant's alteration and/or failure to retain records of hours worked by its employees was willful and deliberate, and designed to serve their policy of unlawfully denying overtime compensation to their employees.

118. As a result of the unlawful acts of Defendant, Named Plaintiffs and Employees Entitled to Notice have been deprived of overtime compensation in the amounts to be determined and trial, and are entitled to recovery of such amounts, liquidated damages (or, alternatively, interest), attorney's fees and costs and other compensation pursuant to U.S.C. § 216(b) and IND. CODE ANN. § 22-2-2-9.

119. Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Indiana are entitled to unpaid overtime and other compensation, interest and attorneys' fees, and all other remedies available as compensation for Defendant's violations of the IMWL, by which the Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Indiana have suffered and continue to suffer damages.

**COUNT III**

**INDIANA WAGE PAYMENT STATUTE - FAILURE TO PROMPTLY PAY WAGES**

120. Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

121. At all times relevant to this Complaint, Defendant was the "employer" of Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Indiana and, as such, Defendant was required to comply with IWPS's provisions. IND. CODE ANN. § 22-2-5-1.

122. The IWPS provides that employers shall pay covered employees all wages, including overtime, "at least semimonthly or bimonthly." IND. CODE ANN. § 22-2-5-1(a).

123. At all times material to this Complaint, Defendant has refused to pay Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Indiana all owed overtime wages at one and one-half (1 ½) times their normal hourly rate and all wages at the statutorily mandate minimum wage rate, within ten (10) days of performing the work. IND. CODE ANN. § 22-2-5-1.

124. The wages of Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Indiana remain unpaid for more than ten (10) days beyond their regularly scheduled payday.

125. Defendant's violations of the IWPS have been of a willful, intentional, or bad faith nature or have otherwise exhibited a reckless disregard of the IWPS's provisions.

126. Named Plaintiffs and Employees Entitled to Notice are entitled to their wages due, double the amount of wages due, and reasonable attorneys' fees and costs as required by IND. CODE ANN. § 22-2-5-2.

## **PRAYER FOR RELIEF**

WHEREFORE, Named Plaintiffs, on behalf of themselves and the Putative Plaintiffs, pray that this Court enter the following relief:

A. For an Order sending Court Supervised Notice to the FLSA and Indiana Employees Entitled to Notice as defined herein and requiring Defendant to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

B. In the event the Defendant seeks to have discovery on the issues of whether the FLSA Employees Entitled to Notice are similarly situated to the Named Plaintiffs, that the Court issue an order tolling the FLSA statute of limitation for the FLSA Employees Entitled to Notice as of the filing of this Complaint;

C. Designating Named Plaintiffs as the representatives for the FLSA Employees Entitled to Notice and designating counsel of record as Class Counsel;

D. Issuing proper notice to the FLSA Employees Entitled to Notice at Defendant's expense;

E. Unpaid wages, including overtime wages and an equal amount as liquidated damages pursuant to the FLSA and the supporting regulations for the Named Plaintiffs and the FLSA Employees Entitled to Notice;

F. A declaratory judgment that the practice complained of herein is unlawful under the IMWL and the IWPS;

G. Awarding Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Indiana double the amount of wages due for Defendant's violation of IND. CODE ANN. §§ 22-2-9-2 and 22-2-5-2 as described above;

H. Awarding the cost of this action, including reasonable attorneys' fees and any such further relief as the Court may deem just, proper, and equitable pursuant to the FLSA and IND. CODE ANN. §§ 22-2-9-2 and 22-2-5-2.

I. Awarding pre-judgment and post-judgment interest;

J. Any other relief to which the Named Plaintiffs and Employees Entitled to Notice may be entitled.

**JURY DEMAND**

Named Plaintiffs request a trial by jury on all their claims.

Dated: February 4, 2026.

Respectfully submitted,
**BARKAN MEIZLISH DEROSE COX, LLP**

*/s/ Robert E. DeRose*

Robert E. DeRose (OH Bar No. 0055214)
Nickole K. Iula (OH Bar. No. 0099895)
Anna R. Doren (OH Bar No. 0104562)*
4200 Regent Street, Suite 210
Columbus, OH 43219
Phone: (614) 221-4221
Facsimile: (614) 744-2300
Email: bderose@barkanmeizlish.com
niula@barkanmeizlish.com
adoren@barkanmeizlish.com

*Attorneys for Plaintiffs*

By: */s/ Clif Alexander*

**Clif Alexander***
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson***
Texas Bar No. 24045189
austin@a2xlaw.com
**Carter T. Hastings***
Texas Bar No. 24101879
carter@a2xlaw.com
**ANDERSON ALEXANDER, PLLC**
101 N. Shoreline Blvd, Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

*Attorneys for Plaintiffs*

*Application *pro hac vice* forthcoming